## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KENNETH NATHAN, Chapter 7
Trustee, for the Bankruptcy Estate of
Nicole Massey, Case No. 19-41514 in
the United States Bankruptcy Court
Eastern District of Michigan,

   Plaintiff,

           Case No: 2:19-cv-10131

v.

           Hon. Paul D. Borman

GREAT LAKES WATER AUTHORITY,

   Defendant.

---

| | |
|---|---|
| Batey Law Firm, PLLC | RANDAL M. BROWN (P70031) |
| SCOTT P. BATEY (P54711) | CHERYL YAPO (P55682) |
| RYAN T. FOWLER | Attorneys for Defendant |
| Attorneys for Plaintiff | 735 Randolph, Suite 1900 |
| 30200 Telegraph Road, Suite 400 | Detroit, MI 48226 |
| Bingham Farms, MI 48025 | (313) 964-9068-telephone |
| (248) 540-6800-telephone | randal.brown@glwater.org |
| (248) 540-6814-fax | cheryl.yapo@glwater.org |
| sbatey@bateylaw.com | |
| rfowler@bateylaw.com | Starr, Butler, Alexopoulos & Stoner, PLLC |
| | KAY RIVEST BUTLER (P41651) |
| | WILLIAM R. THOMAS (P77760) |
| | Co-Counsel for Defendant |
| | 20700 Civic Center Drive, Suite 290 |
| | Southfield, MI 48076 |
| | (248) 554-2700-telephone |
| | kbutler@starrbutler.com |
| | wthomas@starrbutler.com |

---

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff, KENNETH NATHAN, Chapter 7 Trustee, for the Bankruptcy Estate of Nicole Massey, Case No. 19-41514 in the United States Bankruptcy Court Eastern District of Michigan, by and through their attorney's Scott P. Batey and the Batey Law Firm, PLLC and for their Response to Defendant's Motion for Summary Judgment states that Defendant's Motion for Summary Judgment must be denied for the reasons set forth in the attached Brief.

Respectfully submitted,

**BATEY LAW FIRM, P.L.L.C.**

By: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

Dated: February 13, 2020

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KENNETH NATHAN, Chapter 7
Trustee, for the Bankruptcy Estate of
Nicole Massey, Case No. 19-41514 in
the United States Bankruptcy Court
Eastern District of Michigan,

      Plaintiff,

                              Case No: 2:19-cv-10131

v.

                              Hon. Paul D. Borman

GREAT LAKES WATER AUTHORITY,

      Defendant.

---

| | |
|---|---|
| Batey Law Firm, PLLC | RANDAL M. BROWN (P70031) |
| SCOTT P. BATEY (P54711) | CHERYL YAPO (P55682) |
| RYAN T. FOWLER | Attorneys for Defendant |
| Attorneys for Plaintiff | 735 Randolph, Suite 1900 |
| 30200 Telegraph Road, Suite 400 | Detroit, MI  48226 |
| Bingham Farms, MI  48025 | (313) 964-9068-telephone |
| (248) 540-6800-telephone | randal.brown@glwater.org |
| (248) 540-6814-fax | cheryl.yapo@glwater.org |
| sbatey@bateylaw.com | |
| rfowler@bateylaw.com | Starr, Butler, Alexopoulos & Stoner, PLLC |
| | KAY RIVEST BUTLER (P41651) |
| | WILLIAM R. THOMAS (P77760) |
| | Co-Counsel for Defendant |
| | 20700 Civic Center Drive, Suite 290 |
| | Southfield, MI  48076 |
| | (248) 554-2700-telephone |
| | kbutler@starrbutler.com |
| | wthomas@starrbutler.com |

---

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

**INDEX OF AUTHORITY**.......................................................................ii

**STATEMENT OF ISSUES PRESENTED**..........................................v

**INTRODUCTION**...................................................................................1

**STATEMENT OF FACTS**……………………………………….....1

    **A.** Defendant's Severe Harassment of Plaintiff Based on Gender and Use of FMLA………………………………………………………..……1

    **B.** Plaintiff was Terminated in Retaliation for her Complaints of Harassment and Use of FMLA Leave………………………………….………...8

**STANDARD OF REVIEW**………………………………………...12

**LAW AND ARGUMENT**…………………………………..…..............14

  **I.**   Plaintiff was Discriminated Against on the Basis of Sex..………………....14

       **A.** The Harassment/Discrimination was Severe and Pervasive………...16

  **II.**   Plaintiff was Retaliated Against for Complaining of Gender/Sex Harassment/Discrimination in Violation of Title VII……………..…...…19

  **III.**  Plaintiff Has Established a Prima Facie Case Under FMLA………….…21

  **CONCLUSION**.................................................................................23

# INDEX OF AUTHORITY

## CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 250, 251-252 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).......12, 13

*Bell v. Prefix, Inc.,*
321 F. App'x 423, 426 (6th Cir. 2009)…………………………………..…..23

*Bennett v. City of Eastpointe,*
410 F.3d 810, 817 (6th Cir. 2005)...................................................................13

*Biegas v. Quickway Carriers, Inc.,*
573 F.3d 365, 374 (6th Cir. 2009)..................................................................13

*Black v. Zaring Homes, Inc.,*
104 F.3d at 826…………………………………………………...……….17

*Bryson v. Regis Corp.,*
498 F.3d 561, 570 (6th Cir. 2007)………………………………..……22, 23

*Burlington Indus. Inc. v. Ellerth,*
524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)…………….....……18

*Celotex Corp. v. Catrett,*
477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)……..………13

*Chandler v. Specialty Tires of Am.,*
283 F.3d 818, 826 (6th Cir. 2002)…………………………………….…..20

*Clark v. United Parcel Serv., Inc.,*
400 F.3d 341, 351 (6th Cir. 2005)…………………………………….…..18

*Davis v. Monsanto Chem. Co.,*
858 F.2d 345, 349 (6th Cir. 1988)……………………………….....……17

*Faragher v. Boca Raton,*
524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)……..15, 17, 18

*Hafford v. Seidner,*
 183 F.3d 506, 512 (6th Cir. 1999)…………..……………………………..14, 18

*Harris v. Forklift Sys. Inc.,*
 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)……….…..…14, 16

*Meritor Sav. Bank, FSB v. Vinson,*
 477 U.S. 57, 65, 67 (1986)…………………………………………....…..16

*Mickey v. Zeidler Tool & Die Co.,*
 516 F.3d 516, 525 (6th Cir. 2008)…………..………………………20, 21

*Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,*
 276 F.3c 845, 848 (6th Cir. 2002)……………………………………………13

*Nguyen v. City of Cleveland,*
 229 F.3d 559, 563 (6th Cir. 2000)……………………………….………..20

*Oncale v. Sundowner Offshore Servs., Inc.,*
 523 U.S. 75, 118 S. Ct. 998, 1003, 140 L. Ed. 2d 201 (1998)…………...……17

*PDV Midwest Ref., L.L.C. v. Armada Oil & Gas Co.,*
 305 F.3d 498, 505 (6th Cir. 2002)...................................................................14

*Robinson v. Jacksonville Shipyards, Inc.,*
 760 F. Supp. 1486, 1524 (M.D. Fla. 1991)…………………………………18

*Rodgers v. Banks,*
 344 F.3d 587, 595 (6th Cir. 2003)...................................................................13

*Skrjanc v. Great Lakes Power Serv. Co.,*
 272 F.3d 309, 314 (6th Cir. 2001)……………………………………...……22

*Smith v. Rock-Tenn Servs., Inc.,*
 813 F.3d 298, 307 (6th Cir. 2016)……………………………………...……15

*Street v. Bradford & Co.,*
 886 F.2d 1472, 1479 (6th Cir. 1989)………………………………...………13

*Thorton v. Fed. Express Corp.,*
    530 F.3d 451, 455 (6th Cir. 2008)……………………………………..………15

*Waldo v. Consumers Energy Co.,*
    726 F.3d 802, 813 (6th Cir. 2013)................................................................15

*Williams v. GMC,*
    187 F.3d 553, 562 (6th Cir. Ohio 1999)…………………………..………15, 17

## OTHER STATUTES

Family Medical Leave Act………………………………………....………21, 22, 23

## RULES

Fed. R. Civ. P. 56(a)................................................................................................12

Fed. R. Civ. P. 56(c)(1)(A), (B)……………………………………....….…....13

Fed. R. Civ. P. 56(e)(3)……………………………………………....…….…13

Mich. Comp. Laws § 37.2701…………………………………………....…20

42 U.S.C. § 2000e-2(a)(1)……………………………………....…....………14

42 U.S.C. § 2000e-3(a)……………………………………………....…….…..20

## STATEMENT OF ISSUES PRESENTED

**I.** Whether there are Questions of Fact that Plaintiff Was Subjected to a Hostile Work Environment and Sexually Harassed and Discriminated Against by Co-Workers and Supervisors Who Routinely Made Comments and Jokes About Plaintiff's Breasts.

Plaintiff answers:          "YES"
Defendant answers:          "NO"

**II.** Whether there are Questions of Fact that Plaintiff Was Discriminated Against by Defendant Due to her Sex/Gender Which Created a Hostile Work Environment.

Plaintiff answers:          "YES"
Defendant answers:          "NO"

**III.** Whether Plaintiff Was Retaliated Against and Suffered Adverse Employment Action for Exercising Her Rights Under Title VII and the Elliott-Larsen Civil Rights Act by Complaining of the Harassment and Discrimination.

Plaintiff answers:          "YES"
Defendant answers:          "NO"

**IV.** Whether Plaintiff Has Established a *Prima Facie* Case Under the FMLA.

Plaintiff answers:          "YES"
Defendant answers:          "NO"

## INTRODUCTION

This is an employment case in which Plaintiff was sexually harassed, subjected to a hostile work environment and terminated due to her sex/gender, retaliated against for complaints of sex discrimination and harassment, and retaliated against for using her FMLA time.  During her employment with Great Lakes Water Authority ("GLWA"), Plaintiff was constantly teased, tormented and harassed by employees and supervisors at GLWA based on the size of her breasts.  Additionally, Plaintiff was mocked, ridiculed and criticized for her use of FMLA leave, and given the nickname "FMLA Queen." The record and evidence clearly establish that Defendant created a hostile work environment on the basis of sex and wrongfully terminated Plaintiff in retaliation for complaining about sex discrimination and use of FMLA leave and Defendant's Motion for Summary Judgment must be denied.

## STATEMENT OF FACTS

**A.    Defendant's Severe Harassment of Plaintiff Based on Gender and Use of FMLA**

Plaintiff started working as a Security Officer for the Detroit Water and Sewerage Department ("DWSD") in 2004.  (Exhibit "A", Massey 42:15-15).  In 2015, the DWSD site that Plaintiff worked at was taken over by Defendant, Great Lakes Water Authority ("GLWA"), and Plaintiff, along with a number of her co-workers from DWSD were re-hired by GLWA.    (Exhibit "B", Offer of Employment).  Plaintiff's treatment under DWSD provides important context to her

claims against GLWA because several of her harassers (primarily Chief Barnett Jones, Lieutenant Arnold Sheard, and Sergeant Tonya McNair 'f/k/a Tonya Bell') started tormenting Plaintiff about her breasts and use of FMLA time while at DWSD, and continued after Plaintiff was employed at GLWA. (Exhibit "A", Massey 199-201:1-18). The record is clear that despite numerous complaints to upper management of DWSD and GLWA, no remedial measures were taken to stop or prevent the harassment and discrimination. (Exhibit "A", Massey 44:17-19).

Plaintiff suffers from severe asthma and was approved for intermittent FMLA at both DWSD and GLWA as needed. (Exhibit "A", Massey 88:20-23). (Exhibit "C", 2011 Complaint). While at DWSD Plaintiff was belittled and yelled at for use of FMLA leave. Plaintiff filed a complaint which detailed how senior service guards harassed her for her use of FMLA leave giving her the nickname "FMLA Queen." (Exhibit "C"). The nickname "FMLA Queen" began at DWSD, but continued at GLWA. (Exhibit "A", Massey 199-201:1-18).

Plaintiff's breasts were also a constant source of ridicule at both DWSD, and GLWA. While employed at GLWA Plaintiff on a daily basis was told by co-workers and supervisors that her breasts were too large, she needed a more supportive bra, and she was subjected to invasive uniform checks because of her breasts. (Exhibit "A", Massey 116:14-18; 117:3-13; 278:7-9). On one occasion, at the direction of Chief Jones, Plaintiff's supervisor approached her, asked if she was wearing a bra,

and proceeded to stick her hand down Plaintiff's shirt to check.  (Exhibit "A", Massey 130-131:19-11).  On another occasion a co-worker told her that her breasts were so big it looked like she was going to trip over them.  (Exhibit "A", Massey 123:19-21).

While at GLWA Plaintiff was also harassed about use of FMLA leave and denied FMLA leave.  (Exhibit "D", Investigation Report).  In mid-2015 Plaintiff had three asthma attacks and followed proper procedure to use her FMLA leave due to asthma, but her supervisor, Ms. McNair, denied it each time, accusing Plaintiff of faking her symptoms.  (Exhibit "D", Investigation Report).  Two of the incidents were so bad they resulted in Plaintiff being admitted to the hospital for several days, yet Defendant denied her FMLA leave.  (Exhibit "E" Dr. Notes After Denied FMLA).  Plaintiff promptly filed a complaint due to the blatant violation of FMLA. Without interviewing any of Plaintiff's witnesses and apparently ignoring Plaintiff's hospitalization, Defendant ruled that Plaintiff's claims were not substantiated. (Exhibit "D", Investigation Report).

On one occasion in 2016, Plaintiff started her menstrual period due to the harassment while at work, which resulted in a significant amount of blood soaking through her pants.  (Exhibit "F", Plaintiff's Complaint to HR).  In response, Sergeant McNair denied her FMLA leave and instead ridiculed and made fun of Plaintiff, requiring her to finish her shift in blood-soaked clothes.  (Exhibit "F", Plaintiff's

Complaint to HR).  After this incident, Plaintiff would often find towels or plastic placed on her chair and her co-workers would laugh at her when she saw it.  (Exhibit "F", Plaintiff's Complaint to HR).

In June of 2016, Plaintiff complained to a co-worker regarding the bullying and harassment that she was experiencing at GLWA, and how difficult it was for her to cope with it.  (Exhibit "G", Yarnall Investigation).  In a written statement, the co-worker stated that Plaintiff believed she was being targeted and that "she's been wrote up many times due to lies told by other officers she believes to get her fired" and that "she's known as "Stinky one," and the "FMLA person."  (Exhibit "G").  She also complained "she's been made fun of by people at WWTP because of the size of her breast. She said she was accused once of not wearing a Bra to work and the supervisor on that day confronted her about not wearing a bra to work" and that "many people have harassed her about her breast size over the years and that she's having this done [breast reduction surgery] as a confidence booster to herself."  (Exhibit "G").

Rather than make any kind of effort to address Plaintiff's concerns, Defendant retaliated against her and launched an investigation against her for complaining of the harassment and discrimination.  (Exhibit "G", p. 2).  Sergeant McNair, one of the officers Plaintiff accused of FMLA harassment wrote a vindictive and scathing response to another of Plaintiff's harassers, Chief Barnett Jones, which prompted an investigation against Plaintiff.  (Exhibit "G", p. 3).  In a clear attempt to retaliate

against Plaintiff, Sergeant McNair's response letter states "Ms. Massey's topic of conversation was totally inappropriate and unacceptable and should not be tolerated" and that "she's creating a disruptive work environment" and "Ms. Massey's conduct is unbecoming of an officer and disciplinary action will be issued. (Exhibit "H", Letter from Sergeant McNair). Significantly, the co-worker who reported Plaintiff's concerns stated the conversation was not disruptive and he had no issues working with Ms. Massey. (Exhibit "G", p. 1).

On June 19, 2016, shortly after Sergeant Bell shamed Plaintiff for discussing the harassment and discrimination she was experiencing, she called Plaintiff into her office and made thinly veiled threats about termination after Plaintiff complained of Sergeant McNair's treatment of her in a formal review. (Exhibit "F", Plaintiff's Complaint to HR). In retaliation for Plaintiff's complaints, Plaintiff was issued a corrective disciplinary action for allegedly failing to "make verbal contact with her immediate supervisor for the approval of a vacation request." (Exhibit "I", 6/25/2016 Corrective Action Form). Plaintiff adamantly denied the legitimacy of this corrective action because she **did** make several attempts to request time off to Sergeant McNair on June 20, 2016, in accordance with policy. (Exhibit "J", Grievance Form). It was apparent to Plaintiff that she was being retaliated against and she filed a charge with the EEOC. (Exhibit "K", 7/20/2016 EEOC Charge of Discrimination).

After Plaintiff's 2016 EEOC complaint, Defendant continued to retaliate against Plaintiff, and it became clear to her that Defendant was looking for pretextual reasons to terminate her. (Exhibit "A", Massey 131:12-18). After filing the complaint with the EEOC, Sergeant McNair would routinely refer to her as a "snitch", and Plaintiff was transferred to a different location, which was less desirable and farther from her home. (Exhibit "A", Massey 158-160:5-8). Plaintiff also noticed that Defendant started over scrutinizing her and was attempting to write her up for everything they possibly could. (Exhibit "A", Massey 158-159:25-10). On August 2, 2016, Lieutenant Slaughter confronted Plaintiff and asked her to sign a written reprimand without giving any explanation of what the allegations were. (Exhibit "L", Massey Written Complaint). While Defendant undertook its blatant campaign against Plaintiff, the sex harassment and bullying continued. (Exhibit "L", Massey Written Complaint). In March of 2017, a vulgar image of a half-naked woman with large breasts was posted on Plaintiff's locker. (Exhibit "M", Image on Locker). On July 6, 2017, Lieutenant Sheard approached Plaintiff and again told her that she needs a more supportive bra. (Exhibit "A", Massey 125:9-11). On the same day, both Sergeant McClain and Sergeant Stevenson told Plaintiff that she looked like a "hot ass mess." (Exhibit "L", Massey Written Complaint). On September 24, 2017, Plaintiff's co-workers mocked her about the size of her breasts and attempted to invoke a response stating, "I wish the bitch would say something." (Exhibit "A",

Massey 171:1-6).  Plaintiff immediately reported the incident to Chief Jones and her union representative, but nothing was done.  (Exhibit "A", Massey 171:7-11).

While Plaintiff was experiencing severe harassment at work, she was documenting it and reporting to Defendant's HR department.  The record is clear that Plaintiff complained to Vallorie Parks-Turner, a member of GLWA HR Department.  Ms. Parks-Turner testified that Plaintiff complained that she was being harassed on the basis of sex with the constant comments about her breasts and the size of her breasts and that she was being retaliated against for filing complaints. (Exhibit "N", Parks-Turner 8-9:17-14).  Significantly, Ms. Parks-Turner testified that HR took corrective action and counseled Arnold Sheard and Barrett Jones about their harassment of Plaintiff.  (Exhibit "N", Parks-Turner 11:1-9).

Ms. Parks-Turner also testified that Ms. Massey complained about inappropriate comments from her supervisors about her bra and that Defendant's conduct towards Plaintiff was "definitely inappropriate."  (Exhibit "N", Parks-Turner 15:10).

Significantly, Ms. Parks-Turner testimony contradicted the testimony of Chief Jones and Lieutenant Sheard, both of whom made self-serving denials that they never harassed Plaintiff, never saw anyone harass Plaintiff, and that they were ever talked to by HR regarding Plaintiff's complaints.  (Exhibit "O", Jones 12:19-25; 15-16:16-9); (Exhibit "P", Sheard 11-12:15-11).  Chief Jones' and Lieutenant Sheard's

knowledge of Plaintiff's complaints against them is essential to Plaintiff's claims.  It is abundantly clear that Ms. Parks-Turner's testimony contradicts the self-serving testimony of Chief Jones and Lieutenant Sheard which creates questions of fact regarding Defendant's true motivation for terminating Plaintiff.

After years of torment and verbal abuse based on the size of her breasts, Plaintiff decided to have breast reduction surgery.  (Exhibit "A", Massey 178-5-12).  Plaintiff explicitly told Ms.  Parks-Turner that the reason she was having the surgery was "because she got tired of people teasing her."  (Exhibit "N", Parks-Turner, 18:23-25).  Ultimately, Plaintiff had her breast reduction surgery on November 3, 2017, but she later discovered that while she was recovering, her harassers were building an illegitimate case against her for termination.

**B.   Plaintiff was Terminated in Retaliation for her Complaints of Harassment and Use of FMLA Leave**

Plaintiff hoped that the sexual harassment would stop after she went to HR, but all it did was motivate Defendant to start looking for pretextual reasons to terminate her in retaliation for her complaints.  On October 29, 2017, days before her surgery, Plaintiff was performing a routine service site check, which entailed driving over rough terrain and unfinished roads.  (Exhibit "A", Massey 66:1-3).  During her shift at 12:21 p.m., Plaintiff contacted her supervisor and reported that her vehicle appeared to be leaking anti-freeze, and Plaintiff was instructed to submit a Security Incident Report, which she promptly did.  (Exhibit "Q", 10/29/2017

Incident Report). In her report Plaintiff stated, "on the above date and time, I, Security Officer Nicole Massey, observed the temp gauge in Vehicle 381006 was all the way on H "hot." Upon further inspection, I observed orange antifreeze leaking from the front of the vehicle. I then notified Fusion D. Woodmore and Sergeant McLain immediately. Unknown as to when or why it began leaking." (Exhibit "Q", 10/29/2017 Incident Report).

Even though Plaintiff reported damage to the vehicle exactly as she was instructed, Defendant launched a full-fledged investigation with a pre-determined pretextual conclusion that Ms. Massey was guilty of wrongdoing. (Exhibit "R", Corrective Action and Incident Report). Without asking Plaintiff her side of the story, a sham investigation that was led by Lieutenant Sheard, one of Plaintiff's harassers whom Plaintiff had complained about to HR, inexplicably concluded that Plaintiff falsified an accident report based on the unsupported assumption that she knowingly concealed running over a railroad tie. (Exhibit "R", Corrective Action and Incident Report). Lieutenant Sheard himself admitted, "I don't know what she knew," because he never bothered to talk to her before concluding that she falsified a report. (Exhibit "P", Sheard 39:18-25; 40:13-18). Lt. Sheard's admission clearly undermines any justification that Defendant had a legitimate reason to terminate Plaintiff. In addition, Sergeant McLain, who prepared the accident report also stated that he never saw any evidence to indicate that Plaintiff knew that she was involved

in an accident.  (Exhibit "S", McLain 21:19-21).

Plaintiff adamantly denied that she had knowledge of being involved in an accident, and had she known, she would have no reason not to report it.  (Exhibit "A", Massey 282:3-9).  She had direct knowledge of other employees getting into accidents while on the job without being terminated, and she was well aware that getting into an accident was not a terminable offense, so she would have no reason not to report an accident if she had knowledge that on occurred.  (Exhibit "A", Massey 282:3-9).  Plaintiff testified there was no reason for her to falsify the report:

> … there's no reason for me not to report a vehicle accident if I truly believed I had one. I would have reported it, because the worst-case scenario was I probably would have got wrote up or a three-day suspension. I've never falsified documentation with the Great Lakes Water Authority, so why would they believe I want to falsify documentations now? (Exhibit "A", Massey 276:11-20).

Although Plaintiff acknowledged the plausibility of Defendant's theory that she ran over a railroad tie, she adamantly denied having any knowledge of it if it did occur, and Plaintiff could not report something that she did not know occurred. (Exhibit "A", Massey 282-283:21-8).

Significantly, the record is clear that it is common knowledge that while getting into an accident is NOT a terminable offense, falsifying a report IS a terminable offense.  (Exhibit "T", GLWA The Way We Work Handbook).  In fact, the record is clear that no reasonable juror would believe that Plaintiff would lie about something that could not lead to her termination which by doing so, would

give Defendant justification to terminate her.

On October 30, 2017, Plaintiff went off on leave in preparation for her breast reduction surgery, and on October 31, 2017, through a co-worker, Plaintiff learned about the plot to terminate her based on the alleged accident she knew nothing about. (Exhibit "R", Corrective Action and Incident Report, p. 4). It was clear to Plaintiff that Defendant was attempting to get rid of her, and she wanted a record to show that she felt she was being retaliated against, so she called two of Defendant's HR representatives as well as her Union representative. (Exhibit "A", Massey 140-141:25-1).

Based on Lieutenant Sheard's predetermined decision to find that Plaintiff falsified a report, he submitted a Corrective Action form on November 9, 2017. (Exhibit "R", Corrective Action and Incident Report). On November 15, 2017, Plaintiff was called into a meeting regarding the corrective action, and she was asked to look it over. Plaintiff's Union representative was present and she asserted that there was no evidence to support Defendant's claims, and she advised Plaintiff not to sign the corrective action. (Exhibit "A", Massey 151:5-22). Following the meeting, Plaintiff's Union representative filed a grievance stating no adequate investigation was done by the Office of Security, and during the hearing, Plaintiff's accusers could not answer questions or provide any clarity as to why no one interviewed Ms. Massey before concluding that she falsified a report. (Exhibit "U"

11/16/2017 Official Grievance Form).  Ultimately, Plaintiff's attempt to give her side of the story was futile because her harassers had already made the decision to terminate her in retaliation for her complaints against them, and she was suspended that same day before being officially terminated on December 18, 2019.  (Exhibit "V", Termination letter).

## STANDARD OF REVIEW

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S.  242, 250, 106 S.  Ct.  2505, 91 L.Ed.2d 202 (1986).  A motion for summary judgment under Rule 56 presumes the absence of a genuine issue of material fact for trial.  The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law."  *Anderson,* 477 U.S. at 251–52.

The party bringing the motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the

absence of a genuine dispute over material facts.  Fed.R.Civ.P. 56(c)(1)(A), (B); *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 848 (6th Cir.2002).  If the party opposing the motion contends that facts are in dispute, he may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).  A party opposing a Motion for Summary Judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson,* 477 U.S.  at 252.  If the non-moving party, after sufficient opportunity for discovery, is unable to meet his burden of proof, summary judgment is clearly proper.  Fed.R.Civ.P. 56(e)(3); *Celotex Corp. v. Catrett,* 477 U.S.  317, 322–23, 106 S.  Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a Motion for Summary Judgment "the evidence should be viewed in the light most favorable to the non-moving party and the facts and any inferences that can be drawn from those facts, must be viewed in the light most favorable to the non-moving party.  *Biegas v. Quickway Carriers, Inc.,* 573 F.3d 365, 374 (6th Cir. 2009) (quoting *Bennett v. City of Eastpointe,* 410 F.3d 810, 817 (6th Cir. 2005) (citations omitted)); *see also Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003) ("In evaluating the evidence, [the district court] 'draw[s] all reasonable inferences

13

therefrom in a light most favorable to the non-moving party.'") (quoting *PDV Midwest Ref., L.L.C.  v. Armada Oil & Gas Co.,* 305 F.3d 498, 505 (6th Cir. 2002)).

## LAW AND ARGUMENT

## I.   Plaintiff was Discriminated Against on the Basis of Sex

The record is clear and leaves no doubt that Plaintiff was discriminated against on the basis of sex.  For more than two years she was the victim of a hostile work environment where her entire department, including supervisors participated in harassing her due to the size of her breasts.  Comments, jokes and remarks about her breasts took place on a daily basis and were clearly about sex and Plaintiff's sex.

Title VII prevents an employee from being discriminated against "with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff may establish a Title VII violation by proving that the discrimination based on sex created a hostile work environment.  Harris v. Forklift Sys. Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993); Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999) (amended opinion).

In order to prevail on a claim of hostile environment sexual harassment under Title VII, Plaintiff must allege and prove that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment

was based on sex; (4) the harassment unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment; and (5) that there is a basis for employer liability. *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016); *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013) *Thorton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008).

An employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *Faragher v. Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998). Employers have an affirmative duty to prevent sexual harassment by supervisors. *Williams*, 187 F.3d at 561. Once a plaintiff has established actionable discrimination, the inquiry turns on whether a supervisor's harassment culminated in a "tangible employment action." *Id.* If a plaintiff can prove a tangible employment action, liability is automatic; if there was no tangible employment action, employers have an affirmative defense to liability. *Id.*

In this case, the record is clear that Plaintiff was discriminated against and harassed due to her sex/gender. Plaintiff sex is without question a protected class. The harassment and discrimination was obviously based on her sex. Plaintiff testified that she was constantly facing questions, jokes, scrutiny and comments about her breasts which are directly about her sex/gender. The harassment and discrimination was constant and daily over a two year period at GLWA creating a

15

hostile work environment that was so offensive, so serve and so perverse that Plaintiff elected to undergo surgery to reduce the size of her breasts in hopes of putting the harassment to an end. Defendant knew Plaintiff was being harassed due to her sex and the size of her breasts. Her supervisors, who were in upper management with the ability to take corrective action, not only knew about the harassment, they participated in the harassment. In addition, Plaintiff went beyond complaining to her supervisors, she went to HR and still no remedial action was done.

### A.     The Harassment/Discrimination was Severe and Pervasive

When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' [that] Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)) (internal citations omitted). In making this determination, the Court must look to the totality of the circumstances and consider such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in

the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "In establishing the requisite adverse effect on work performance . . . the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. The employee need only show that the harassment made it more difficult to do the job." *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988).

In addition, "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S. Ct. 998, 1003, 140 L. Ed. 2d 201 (1998); *Faragher*, 118 S. Ct. at 2283; *Black*, 104 F.3d at 826. In *Oncale,* the Supreme Court stated:

> Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive. *Oncale*, 118 S. Ct. at 1003.

In *Williams v. GMC*, 187 F.3d 553, 562 (6th Cir. Ohio 1999) the Sixth Circuit stated that while single isolated incidents on their own may not be severe or pervasive enough to create a hostile work environment, when looking at the totality of the circumstances, together will meet that burden:

> the totality-of-circumstances test must be construed to mean that even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation. This totality-of-circumstances examination should be viewed as the most basic tenet of the hostile-work-environment cause of action. Hence, courts must be mindful of

17

the need to review the work environment as a whole, rather than focusing single-mindedly on individual acts of alleged hostility. As one court has noted:

The [severe or pervasive] analysis cannot carve the work environment into a series of discrete incidents and measure the harm adhering in each episode. Rather, a holistic perspective is necessary, keeping in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created thereby may exceed the sum of the individual episodes. *Robinson v. Jacksonville Shipyards, Inc.,* 760 F. Supp. 1486, 1524 (M.D. Fla. 1991).

The Sixth Circuit has instructed that "[t]he harassment should be ongoing, rather than a set of isolated or sporadic incidents." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005).

The fifth element in a hostile work environment action based on harassment by co-workers is different than harassment by a supervisor. In a co-worker case, a plaintiff must show that the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999). In *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) the Supreme Court determined an employer has an affirmative duty to prevent sexual harassment by supervisors.

In this case, it is undisputed that Plaintiff was a member of a protected class. she was subjected to unwelcome sexual harassment that was based on sex including

numerous comments about the size of her breasts, whether she was wearing a bra, whether she needed a bigger bra and someone actually grabbing her breasts. The harassment unreasonably interfered with her work performance by creating a hostile, offensive, and intimidating work environment. While Plaintiff is not entitled to damages for conduct that occurred at DWSD, the harassment and conduct that occurred there is significant and relevant in determining just how offensive, how unreasonable and how hostile Plaintiff's working environment was. While the conduct Plaintiff endued at GLWA alone easily satisfies the severe and pervasive standard when considering the nature of the comments, the touching and number of incidents at GLWA. However, when one considers the same conduct, by the same actors complained to the same people in HR occurred before and no remedial measures were taken, it certainly places in context why Plaintiff believed the only way to stop the harassment was to undergo breast reduction surgery. Finally, the harassment was not only done by Plaintiff's co-workers, her supervisors also participated in the harassment and discrimination.

## II.   Plaintiff was Retaliated Against for Complaining of Gender/Sex Harassment/Discrimination in Violation of Title VII

Title VII and ELCRA both prohibit retaliation against an employee for complaining about discrimination. Title VII states in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter,

or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.   (42 U.S.C. § 2000e-3(a)).

The ELCRA likewise makes it unlawful to:

retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.  (Mich. Comp. Laws § 37.2701).

In order to establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen v. City of Cleveland,* 229 F.3d 559,563 (6th Cir. 2000).

The Sixth Circuit has determined that "[p]roximity in time can raise a prima facie case of retaliatory discharge." *Chandler v. Specialty Tires of Am.,* 283 F.3d 818, 826 (6th Cir. 2002) (internal citations omitted) (emphasis added) in which we have.  In *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516 (6th Cir. 2008), the Sixth Circuit found that plaintiffs established causation based on temporal proximity alone:

Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer

20

learns of a protected activity and the subsequent adverse employment action, the *employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.* (Emphasis added). *Mickey*, 516 F.3d at 525.

In this case, Plaintiff engaged in the protected activity of complaining sex harassment and discrimination. Ms. Parks-Turner testified that Plaintiff complained to HR and HR spoke to Sheard and Jones about how they spoke to her establishing that Defendant knew she complained the harassment and discrimination. Moreover, Sgt. Bell routinely referred to Plaintiff as "snitch" clearly showing Defendant had knowledge Plaintiff complained. It is undeniable that Defendant took adverse action against Ms. Massey when it suspended and terminated her. The stated reason for Plaintiff's termination was clearly pretextual because to terminate her for falsifying a report, Defendant would have had to show that Plaintiff knew it was false and Lt. Sheard testified he did not know what Plaintiff knew. The fact that Defendant's stated reason for termination was pretextual and the temporal proximity to Plaintiff's complaints establish a causal connection between Ms. Massey's complaints and her termination.

## III.  **Plaintiff Has Established a Prima Facie Case Under FMLA**

To establish a prima facie case of discrimination under the FMLA, Plaintiff must show: (1) that she engaged in a statutorily protected activity—such as notifying her employer of her intent to take FMLA leave or taking FMLA leave; (2) that she suffered an adverse employment action; and (3) that there was a minimal causal

connection between the adverse employment action and the protected activity—
which includes indirect evidence of the causal connection such as the proximity in
time between a request for FMLA leave and subsequent discharge. *Skrjanc v. Great
Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir. 2001).

It is undisputed that Plaintiff engaged in a protected activity by taking FMLA
leaves. It is also undisputed that Plaintiff suffered adverse employment actions when
she was terminated. As a result, the first two elements of a prima facie case of FMLA
retaliation are undisputed and the focus must shift to causation. The facts and
evidence are clear that Defendant's adverse employment actions against Plaintiff
were in retaliation for her taking FMLA time.

It is well established that the Plaintiff in an FMLA retaliation (discrimination)
claim has a very low threshold to meet in order to establish a prima facie case. The
Sixth Circuit has held that establishing a prima facie case of discriminatory intent is
"not intended to be an onerous one." *Skrjanc.* 272 F.3d at 315. Moreover, FMLA
retaliation (discrimination) claims are evaluated under a burden shifting framework,
the plaintiff's initial burden is merely to present evidence from which a reasonable
jury could conclude that the plaintiff suffered an adverse employment action under
the circumstances which give rise to an inference of unlawful discrimination."
*Bryson v. Regis Corp.,* 498 F.3d 561, 570 (6th Cir. 2007). To establish a prima facie
case of FMLA discrimination, Plaintiff needs only to present some evidence of

"circumstances which give rise to an inference of unlawful discrimination." *Bell v. Prefix, Inc.,* 321 F. App'x 423, 426 (6th Cir. 2009) *citing Bryson,* 498 F.3d at 570)).

Defendant is a covered entity under FMLA and is therefore required to provide Plaintiff medical leave for a serious medical condition. Throughout her employment with GLWA Plaintiff was harassed and mocked for taking FMLA protected medical leave including being called the FMLA Queen. Finally, tired of Plaintiff complaining about sex discrimination and harassment, and taking FMLA leave Defendant retaliated against her for using FMLA and suspended her without pay upon return for FMLA leave and terminating her shortly thereafter.

## CONCLUSION

The facts and evidence is clear that Plaintiff, Nicole Massey was harassed and discriminated against on the basis of sex throughout her employment with GLWA. The record in this case tells the story of just how severe and pervasive the harassment and discrimination was. Every day for more than two years Plaintiff had to listen to some version of how big her breasts were and in what manner they would get in the way. She was regularly accused of not wearing a bra or that her uniform was not the right size. The record demonstrates that Plaintiff did everything she was supposed to do the address the harassment and discrimination, including having her clothes re-fitted and complaining to HR. When nothing was done to stop or prevent the discrimination and harassment Plaintiff elected to have breast reduction surgery in

hopes that the reduction in the size of her breasts were reduce the harassment and discrimination. Unfortunately and ironically, Plaintiff's use of FMLA leave was the final straw for a Defendant, already irritated of Plaintiff's use of FMLA leave and complaints of sex harassment, who to her as the FMLA Queen, and Defendant terminated her due to her use of FMLA leave and in retaliation for her complaints of sex harassment. Significantly, there are numerous questions of fact within the record where multiple witnesses give completely different testimony regarding essential questions of fact. When taking the facts and evidence in the light most favorable to Plaintiff there are serious questions of fact which preclude Summary Judgment in this matter and Defendant's Motion for Summary Judgment must be denied.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P.  Batey
SCOTT P.  BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

Dated:  February 13, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2020, I electronically filed Plaintiff's Response to Defendant's Motion for Summary Judgment with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys on record.

 /s/Roslyn Cockrell                              
Roslyn Cockrell
Paralegal to Attorney Scott P. Batey

25

LOCAL RULE CERTIFICATION: I, Scott P. Batey, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800
sbatey@bateylaw.com

Dated: February 13, 2020