# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: March 30, 2021

Mr. Scott P. Batey
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025

Ms. Kay Rivest Butler
Mr. William Reed Thomas
Starr, Butler, Alexopoulos & Stoner
20700 Civic Center Drive
Suite 290
Southfield, MI 48076

Ms. Nanette L. Cortese
8071 Main Street, Suite B
Dexter, MI 48130

Re: Case No. 20-1761, *Kenneth Nathan v. Great Lakes Water Authority*
Originating Case No. : 2:19-cv-10131

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0075p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

KENNETH A. NATHAN, Chapter 7 Trustee for the
Bankruptcy Estate of Nicole Massey,

       *Plaintiff - Appellant*,

    *v.*

GREAT LAKES WATER AUTHORITY,

       *Defendant-Appellee.*

No. 20-1761

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:19-cv-10131—Paul D. Borman, District Judge.

Argued: March 2, 2021

Decided and Filed: March 30, 2021

Before: GILMAN, GIBBONS, and SUTTON, Circuit Judges.

———————————

#### COUNSEL

**ARGUED:** Nanette L. Cortese, THE CORTESE LAW FIRM, Bingham Farms, Michigan, for Appellant. Kay Rivest Butler, STARR, BUTLER, ALEXOPOULOS & STONER, PLLC, Southfield, Michigan, for Appellee. **ON BRIEF:** Nanette L. Cortese, THE CORTESE LAW FIRM, Bingham Farms, Michigan, Scott P. Batey, BATEY LAW, Bingham Farms, Michigan, for Appellant. Kay Rivest Butler, William R. Thomas, STARR, BUTLER, ALEXOPOULOS & STONER, PLLC, Southfield, Michigan, for Appellee.

    GIBBONS, J. delivered the opinion of the court in which GILMAN and SUTTON, JJ., joined. GILMAN, J. (pp. 21–22), delivered a separate concurring opinion.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge.  This case involves numerous claims initiated by Nicole Massey against her former employer, Great Lakes Water Authority.  After Massey filed bankruptcy proceedings, Kenneth Nathan, the Chapter 7 trustee of Massey's bankruptcy estate, was substituted as plaintiff.  Nathan alleges that Great Lakes subjected Massey to a hostile work environment through sexual harassment, retaliated against Massey for opposing sexual harassment, and retaliated against Massey for taking leave guaranteed by the Family and Medical Leave Act.  The district court granted summary judgment to Great Lakes on each of Nathan's claims.  We affirm.

I.

Nicole Massey began working for the Detroit Water and Sewerage Department as a security guard in 2004.  Massey alleges that she was harassed during her time at Detroit Water.  According to Massey, Massey's supervisors and co-workers discussed "her medical condition"; commented on "her weight, the size of her breast, her looks and body [odor]"; and referred to her as the "Queen of FMLA."  DE 21-4, Human Rights Form, PageID 664.  The Chief of Security, Barnett Jones, had a female supervisor check to see if Massey was wearing a bra by putting her hand inside Massey's shirt in 2012.  Another one of Massey's supervisors, Sergeant Tonya McNair, repeatedly denied Massey FMLA leave for Massey's asthma.  On one occasion, McNair's denial of leave to Massey resulted in Massey's hospitalization.  McNair also refused to grant a leave request after Massey started her period on the job and bled through her clothes, which led to further harassment by McNair and Massey's co-workers.

In 2015, the City of Detroit contracted with Great Lakes Water Authority to replace Detroit Water as the operator of the City's water and sewer systems.  Great Lakes "is not a department or an agency of the City of Detroit.  [It] is a separate legal entity and a separate employer."  DE 15-1, Offer Ltr., PageID 479.  To ensure a smooth transition from Detroit Water, Great Lakes extended offers of employment to many of the Detroit Water employees.

Massey and the other employees who accepted Great Lakes' offer, including Jones and McNair, were officially terminated from Detroit Water on December 31, 2015, and immediately re-hired in their same positions by Great Lakes on January 1, 2016.

A few months after starting at Great Lakes, Massey had a conversation with one of her co-workers, Daniel Yarnall.  During this conversation, Massey complained about McNair's refusal to grant Massey leave after she started her period and about her co-workers' comments making fun of the size of her breasts and calling her stinky and messy.  Yarnall felt the conversation was "inappropriate" for the workplace, so to "protect himself," he wrote a letter to management detailing his conversation with Massey.  DE 21-8, Yarnall Investigation Rep., PageID 697–98.  In response to Yarnall's letter, McNair wrote to Jones and told him that she would take disciplinary action against Massey for having an inappropriate conversation in the workplace.  The record suggests that Great Lakes did not investigate the substance of any of Massey's allegations, instead choosing to investigate Massey for possible harassment of Yarnall.

In July 2016, McNair evaluated Massey's performance as part of a yearly evaluation process.  During the evaluation meeting, McNair told Massey that she was going to give Massey a score of 69 (presumably out of 100) because Massey's uniform looked "sloppy" and because Massey "needed a more supportive bra."  DE 21-2, Massey Dep., PageID 615–16.  Around that same time, one of Massey's co-workers, Rachel Rice, also told Massey that Massey's "breasts were so big, it looked like [Massey] could trip over them."  *Id.* at 616.

In September 2016, Massey was transferred to a different Great Lakes facility, which meant that McNair was no longer her supervisor.  After the transfer, Lieutenant Arnold Sheard became Massey's second-level supervisor and Sergeants Keith McLain and Ernest Stevenson became her immediate supervisors.

In June 2017, Sheard was conducting a uniform inspection, and he told Massey that she looked "sloppy," and that her breasts were "drooping."  *Id.* at 614.  Then, in July, Sheard told Massey that she "needed a more supportive bra."  *Id.*  Sheard denies using the word bra but admits to telling Massey that "perhaps she needed a garment that would assist her wearing a shirt, wearing her vest under her shirt."  DE 14-14, Sheard Dep., PageID 300.  When asked what

he meant by the word garment, he responded: "I am married. My wife wears a number of garments that will help support her to wear anything she wants to wear." *Id.* at 300−01. Sheard contends that this comment stemmed from his concern that Massey's decision to wear her bulletproof vest on top of her shirt obstructed access to her gun and taser because the vest extended over her waist. Around the same time, Sheard also "joked" with Massey by saying, "You're fired, ha, ha I'm just playing." DE 21-2, Massey Dep., PageID 618.

At some point after Sheard became Massey's supervisor (Massey does not remember exactly when), Massey went to Vallorie Parks-Turner, a human resources generalist in the Great Lakes HR department, and reported that she was being sexually harassed. Parks-Turner opened an investigation into the harassment and spoke with witnesses. At the end of the investigation, HR manager Terri Conerway had a conversation with Jones and Sheard "about how to better communicate" with Massey. DE 14-13, Parks-Turner Dep., PageID 279.

In September 2017, Massey's co-workers laughed at her as she entered a meeting and called her "sloppy." DE 21-2, Massey Dep., PageID 628. One of the co-workers also said "I wish the bitch would say something" as Massey took her seat. *Id.* Massey believes that the laughter and the sloppy comment were in reference to her breasts. During that same meeting, another co-worker told the class that Massey used FMLA leave too much, and the class started clapping. After that meeting, Massey overheard Stevenson telling the co-worker who made the FMLA comment: "Don't worry, shortly we'll be getting rid of her." *Id.* A few weeks later, Sheard told Massey that she was one minute late for work and that if she was one minute late again, he would fire her.

On October 29, 2017, Massey was driving a Great Lakes van around one of Great Lakes' facilities to make sure the facility grounds were secure. Security footage shows that Massey's van did not have any visible front-end damage when she began her shift that day. But at 12:22 pm, security footage shows that the front end of Massey's van was damaged. Massey was the only person with access to the van between the start of her shift and 12:22 pm.

Around 12:45 pm, Massey called one of her supervisors and reported that the heat in her van was not working and that the van was leaking antifreeze. The supervisor instructed her to

leave the van where it was and to fill out an incident report. Massey did so. Massey's report read: "I . . . observed temp gauge in vehicle 381006 was all the way on the H 'hot'. Upon further inspection I observed orange antifreeze leaking from the front of the vehicle. I then notified Fusion D. Woodmore and Sgt. McLain immediately. Unknown as to when or why it began leaking." DE 14-29, Investigation File, PageID 353.

Massey's shift replacement, Nicholas Purcell, also wrote an incident report. In relevant part, Purcell wrote:

> [I] went out to see if I could figure out ware [*sic*] the unit was leaking. I observed a coolant stain on the gravel pad in front of the vehicle, as well as new damage on the front of the vehicle. 1. front clip appears pulled out and away from fenders on both sides. 2. there is a bend in the A/C condenser lower left side.
>
> Vehicle appears to have been "run aground" on something like a parking breaker or railroad tie. A quick check of the area and just about ten feet directly in front of the vehicle are two railroad ties that appear to have been recently pushed a proximately [*sic*] one foot forward. I notified fusion officer, Barry Meeks of my findings and I am taking pictures as instructed. [V]ehicle is unusable as the heavily leaking radiator will cause the vehicle to overheat causing severe damage to the engine.

*Id.* at 354. Purcell later found a portion of the van's front grill on the ground near some bent rebar and a smashed traffic cone.

The next day, a facilities manager inspected the vehicle and found "accident damage to the front end of the van." DE 14-27, Banka Email, PageID 340. Specifically, the "front bumper cover [was] damaged and loose," and "the radiator [had] been punctured and [was] leaking." *Id.* In light of this damage, the manager requested an accident report.

Lieutenant Sheard opened an investigation into the damage to the van to determine whether Massey had falsified her incident report by failing to report that she had been in an accident. According to Massey, Sheard called her on November 1 asking about the damage to the van. Massey told him that she "was unaware of any accident." DE 21-2, Massey Dep., PageID 612. Throughout this litigation, Massey has continued to maintain that, while it is possible that she was in an accident on October 29, she certainly was not aware that she had been in an accident when she turned in her incident report.

On November 3, Massey underwent a previously scheduled breast-reduction surgery. Massey elected to have this surgery because she was tired of being harassed about the size of her breasts and because she was experiencing pain in her back and shoulders. Massey had been making statements to co-workers for years that she wanted to have a breast-reduction surgery because of harassment at work.

Massey testified that she was approved for FMLA leave for this surgery from October 30 through November 17. However, there is no record that anyone at Great Lakes knew about her FMLA leave for her surgery, and the only FMLA document in the record relates to Massey's approved intermittent leave for her asthma, not leave for a surgery.

On November 15, Massey was called into a meeting with Jones, Stevenson, and another lieutenant. The purpose of the meeting was to inform Massey that Sheard had determined that she falsified her incident report. Pursuant to the Great Lakes employee handbook, falsifying an incident report is a fireable offense. In comparison, if Massey had truthfully reported an accident, the worst punishment she would likely have faced would have been a suspension. Upon the advice of her union representative, Massey refused to sign the corrective-action form acknowledging wrongdoing during that meeting. Great Lakes then suspended Massey pending discharge and officially terminated her employment on December 16, 2017.

After she was fired, Massey filed a complaint with the Equal Employment Opportunity Commission, alleging sexual harassment and retaliation. The EEOC issued a Right-to-Sue Letter on November 7, 2018. Massey then filed suit in the Eastern District of Michigan alleging (1) sexual harassment in violation of Title VII and the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), (2) gender discrimination in violation of Title VII and the ELCRA, (3) retaliation for opposing sexual harassment in violation of Title VII and the ELCRA, and (4) retaliation for exercising her rights under the FMLA. After the suit was initiated, Massey filed for bankruptcy.

Great Lakes filed a motion for summary judgment as to all of Nathan's claims. The district court granted Great Lakes' motion in full. Nathan appealed.

## II.

This court reviews a grant of summary judgment *de novo*. *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing FED. R. CIV. P. 56(a)).

## III.

Nathan claims that the district court erred in granting summary judgment to Great Lakes on Massey's Title VII and ELCRA sexual harassment and retaliation claims, and on her FMLA retaliation claim.[1]  For the reasons discussed below, we affirm the district court's grant of summary judgment to Great Lakes.

## A.

Nathan first claims that Great Lakes subjected Massey to a hostile work environment in violation of Title VII and the ELCRA by failing to remedy known sexual harassment perpetrated against Massey by her supervisors and co-workers.  Both Title VII and the ELCRA prohibit employment discrimination "because of . . . sex."  42 U.S.C. § 2000e-2(a)(1); MICH. COMP. LAWS § 37.2202(1)(a).  Sexual harassment in the workplace constitutes discrimination in violation of these provisions "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 468 (6th Cir. 2012) (recognizing that the analysis is the same under Title VII and the ELCRA).  We have broken this standard into five elements:

(1) [The plaintiff] belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [sex], (4) the harassment

---

[1]Although Nathan also pled Title VII and ELCRA gender-discrimination claims in his complaint, he did not discuss those claims in his response to Great Lakes' motion for summary judgment in the district court or in his briefs before this court.  Therefore, Nathan has abandoned his gender-discrimination claims.  *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013).

was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013) (second alteration in original) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)).

Nathan identifies five instances of harassment at Great Lakes that he contends demonstrate that Massey was discriminated against because of her sex. First, Massey's supervisor Sergeant McNair told Massey that she "needed a more supportive bra" while giving Massey a score of 69 on a performance evaluation. DE 21-2, Massey Dep., PageID 615–16. Second, another supervisor, Lieutenant Sheard, told Massey that she "needed a more supportive bra." *Id.* at 614. Third, Lieutenant Sheard told Massey that she "looked sloppy" in her uniform and that her "breasts looked like they were drooping." *Id.* Fourth, a co-worker told Massey that her "breasts were so big, it looked like [Massey] could trip over them." *Id.* at 616. Fifth, another co-worker told Massey that she looked "sloppy" and said "I wish the bitch would say something" while making fun of Massey with other co-workers. *Id.* at 628.

After considering this harassment, the district court granted Great Lakes' motion for summary judgment because it concluded that (1) the harassment at Great Lakes was not based on Massey's sex, and (2) the harassment was not sufficiently severe or pervasive. Although the district court's analysis of the "based on sex" element was flawed, we affirm its grant of summary judgment to Great Lakes on these claims because Nathan has not presented sufficient evidence that the harassment Massey faced was "severe or pervasive," as defined by this circuit's law.

1.

The district court erred in granting summary judgment to Great Lakes on the "based on sex" element of Nathan's hostile work environment claims. Harassment is based on sex when an employee is "exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80 (quoting *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring)). This standard requires Nathan to show that "but for" Massey's sex,

she would not have been harassed in the way that she was. *Williams v. General Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999).

A reasonable jury could find that Massey's supervisors and co-workers would not have harassed Massey about her breasts "but for" Massey's sex. As Nathan points out, Massey's breasts are "a distinguishing feature and characteristic of her body as a woman." CA6 R.16, Appellant Br., at 20. Massey's co-workers specifically chose this feature of Massey's appearance to target with their continued ridicule. A reasonable jury could infer from that choice that these comments would not have been made but for Massey's sex. *See Cecil v. Louisville Water Co.*, 301 F. App'x 490, 499 (6th Cir. 2008) (noting that "gender-specific" language relating to the plaintiff's clothes and sexuality created an issue of fact as to whether harassment was based on sex).

To counter this conclusion, Great Lakes argues that the harassment was not based on Massey's sex because it "merely . . . ha[d] sexual content or connotations." CA6 R.20, Appellee Br., 33. Great Lakes is correct that harassment is not "automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale*, 523 U.S. at 80. For that reason, if Massey were, for example, complaining that a co-worker told a few vulgar jokes in her presence that referenced a woman's breasts, Great Lakes might be entitled to summary judgment. *See, e.g.*, *Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 439 (6th Cir. 2006). In that case, it would be difficult for a jury to infer that the co-worker would not have made similar jokes to a man, at least without some additional evidence of gender-selective joking. *See id.* But here, unlike in the case of vulgar jokes, a jury could easily infer that Massey's alleged harassers would not have made similar comments to a man because the harassers chose to specifically target Massey's breasts with their ridicule.

It is, of course, entirely possible that someone might also ridicule a man because of the size of his breasts. That too could constitute harassment based on sex. *See Smith v. City of Salem*, 378 F.3d 566, 574–75 (6th Cir. 2004) (holding that Title VII prohibits sex stereotyping); *see also Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020) (noting that firing a man for being insufficiently masculine would be discrimination based on sex). But simply because a man could be discriminated against based on his sex with similar comments does not mean that a

reasonable jury could not infer that Massey's colleagues' and supervisors' multiple references to her breasts exposed her to harassment to which male employees at Great Lakes "[were] not exposed." *See Oncale*, 523 U.S. at 80 (quoting *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring)); *accord Bostock*, 140 S. Ct. at 1741 ("Nor is it a defense for an employer to say it discriminates against both men and women because of sex.").

The district court reached the opposite conclusion because it believed that the case law in this circuit "requires harassment born out of either sexual desire or general animus—not just the use of sex-specific terms." DE 29, Order, PageID 928. However, the district court erred by turning sufficient conditions into necessary ones. It is true that the Supreme Court has held that harassment based on sexual desire is harassment based on sex. *Oncale*, 523 U.S. at 80. And in *Williams*, this court held that "non-sexual conduct may be illegally sex-based where it evinces 'anti-female animus.'" 187 F.3d at 565 (quoting *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 905 (1st Cir. 1988)). But these are not the only two paths to a successful sexual-harassment suit. *See Graves v. Dayton Gastroenterology, Inc.*, 657 F. App'x 485, 489 (6th Cir. 2016) (describing these two paths as the "typical[]" paths to proving sexual harassment); *see also Smith*, 378 F.3d at 574 (recognizing sex stereotyping as another basis for liability). It would be inconsistent with the foundational holding of *Williams*—"[a]ny unequal treatment of an employee *that would not occur but for the employee's* [*sex*]" constitutes harassment based on sex—to limit recovery to cases involving sexual desire or animus. *Williams*, 187 F.3d at 565; *see also Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 272 (6th Cir. 2009) ("The district court, in evaluating the 'based on sex' element, focused too narrowly on the motivation for the harassers' offensive conduct rather than on the effects of the conduct on the victim-recipient.").

The district court also over-emphasized the fact that two of Massey's harassers, Sergeant McNair and Rachel Rice, were women. In *Oncale*, the Supreme Court articulated three ways for factfinders to infer that someone of the same sex as the plaintiff was discriminating against the plaintiff: (1) through evidence that the harasser was sexually attracted to the plaintiff, (2) through evidence of sex-specific and derogatory terms, or (3) through evidence that the harasser treated employees of the same sex worse than other employees. 523 U.S. at 80–81. The district court concluded that Massey had no proof of any of these pathways to liability. Contrary to the district

court's assertion, however, Rice and McNair used "sex specific and derogatory terms" for Massey. Rice told Massey that Massey's "breasts were so big, it looked like [she] could trip over them." DE 21-2, Massey Dep., PageID 616. And McNair told Massey that she "needed a more supportive bra" at the same time that she was giving Massey a score of 69 on a performance evaluation. *Id.* at 615–16. The sex-specific and derogatory nature of these comments means that the sex of the harassers does not change the outcome of this case.

Finally, contrary to the district court's assertion, it is irrelevant whether the harassers were also motivated to harass Massey because of her size. *See* DE 29, Order, PageID 929 ("The comments here . . . suggest a problem with Massey's size."). Title VII does not ask whether sex was the only cause of harassment, whether it was a direct cause of harassment, or even whether it was a proximate cause of harassment; it asks only whether the plaintiff's sex was a "but for" cause of harassment. *See Bostock*, 140 S. Ct. at 1739; *see also Williams*, 187 F.3d at 565 ("To establish that the harm was "based on her sex, Williams 'must show that but for the fact of her sex, she would not have been the object of harassment.'" (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). There can be multiple "but for" causes of harassment, and the district court should not have relied on the fact that the harassers' comments also suggest discrimination based on size to find that the discrimination was not based on sex. *Bostock*, 140 S. Ct. at 1739 ("When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision.").

At bottom, this case presents a simple question: When a woman is subjected to derogatory comments about her breasts, could a reasonable jury find that those comments were based on her sex? We conclude that the answer is yes. For that reason, the district court erred in granting Great Lakes' motion for summary judgment on the "based on sex" element of Nathan's claims.

## 2.

The district court, however, correctly granted Great Lakes' motion for summary judgment on the "severe or pervasive" element of Nathan's hostile work environment claim.

Harassment is "severe or pervasive" when it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Harris*, 510 U.S. at 21 (quoting *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). This element has a subjective prong and an objective prong. *Id.*

Nathan has provided sufficient evidence that Massey subjectively perceived the environment at Great Lakes to be abusive. Massey testified that the harassment made it difficult for her to sleep and that it was "tak[ing] over a big part of [her] life on a daily basis." DE 21-2, Massey Dep., PageID 655. She also stated that one of the reasons that she chose to get breast-reduction surgery was the harassment at Great Lakes. Great Lakes disputes this fact and argues that Massey actually chose to get the surgery because of back and shoulder pain, not because she was tired of being harassed. But that is a dispute for trial, not for summary judgment. Taking the evidence in the light most favorable to Massey, a reasonable jury could find that a person who struggled sleeping and who decided to have an invasive surgery because of the harassment that she was facing at work subjectively found her work environment to be abusive.

As to the objective prong, however, Nathan has not provided sufficient evidence that the environment at Great Lakes was objectively hostile. To determine whether a work environment was objectively hostile, courts must consider "all the circumstances," *Harris*, 510 U.S. at 23, from the perspective of "a reasonable person in the plaintiff's position," *Oncale*, 523 U.S. at 81. A non-exhaustive list of the relevant circumstances includes the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The district court correctly concluded that a consideration of these factors demonstrates that a reasonable jury could not find that the environment at Great Lakes was objectively hostile.

We start with the frequency of the harassment. Nathan has evidence of only five instances of sex-based harassment over a roughly fifteen-month period of time. This court has found comparable patterns of harassment insufficient to survive summary judgment in the past. *See Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) (holding that a "a single battery coupled with two merely offensive remarks over a six-month period [did] not create an issue of

material fact"); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 708, 715 (6th Cir. 2007) (deciding that fifteen incidents of mostly "offensive utterances" over a two-year period were not severe or pervasive); *cf. Williams*, 187 F.3d at 563 (finding harassment to be severe or pervasive when there were more than a dozen incidents, many of which involved sexually aggressive behavior, over a period of one year).

In his briefs, Nathan argues that Massey testified during her deposition that she was harassed "daily." CA6 R.16, Appellant's Br., at 13. If true, that fact would likely be sufficient to show that the environment at Great Lake was objectively hostile. *See Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998) (focusing on the "plaintiff's assertion that [harassing comments] were commonplace, ongoing, and continual" in finding that a reasonable jury could conclude that harassment was severe or pervasive). But the portion of the record to which Nathan cites to support this assertion does not actually say that Massey was harassed daily. And we have found no support for this statement elsewhere in the record. In fact, at another point in her deposition, Massey explicitly testified that the five instances of harassment discussed above were the only sex-based harassment she remembers experiencing at Great Lakes.

Nathan also repeatedly references alleged harassment that occurred while Massey worked for Detroit Water, such as a supervisor's placing her hand inside of Massey's shirt to determine whether she was wearing a bra and another supervisor's refusal to grant Massey leave and mocking Massey after she started her period and bled through her clothes. Despite referencing this harassment in his briefs, Nathan has presented no argument as to how this court could hold Great Lakes responsible for harassment that occurred at Detroit Water. Indeed, at oral argument, Nathan's counsel conceded that Nathan is not attempting to hold Great Lakes responsible for harassment that occurred at Detroit Water. Oral Argument at 7:30–8:20. Counsel instead argued that these incidents are merely relevant to show "animus" supervisors held towards Massey and Massey's "psychological state." *Id.* It is true that these instances were perpetrated by individuals who continued to work with Massey after she was hired by Great Lakes and that the harassment in both workplaces was similar. However, that does not make Great Lakes responsible for harassment that occurred during Massey's tenure at Detroit Water. Therefore,

while these incidents may be considered as part of the "constellation of . . . circumstances" surrounding Massey's harassment at Great Lakes, *see Oncale*, 523 U.S. at 82, they do not, in and of themselves, provide a basis for imposing liability on Great Lakes.

We turn next to the severity of the harassment. A review of our case law shows that the harassment at Great Lakes was less severe than harassment that this court has found to be insufficient to survive summary judgment in the past. For example, in *Morris v. Oldham County Fiscal Court*, the harasser told the plaintiff several inappropriate jokes, made a verbal sexual advance toward the plaintiff, referred to the plaintiff as "Hot Lips[,]" and made "isolated comments about [the] plaintiff's state of dress." 201 F.3d 784, 790 (6th Cir. 2000). Yet this court found that the plaintiff had not presented sufficient evidence to survive summary judgment. *Id.*

*Bowman v. Shawnee State University* provides an even more extreme example. 220 F.3d 456 (6th Cir. 2000). In that case, this court concluded that three instances of physically invasive conduct, including a supervisor's grabbing the plaintiff's buttocks and saying that "she controlled [plaintiff's] ass and she would do whatever she wanted with it," coupled with repeated unwanted sexual advances, did not constitute severe or pervasive harassment. *Id.* at 458–59, 464. Although *Bowman* may set the outer limits on what conduct a reasonable person could not believe creates a hostile work environment, the harassment Massey experienced is within that limit.

The third circumstance the Supreme Court has instructed us to consider is the nature of the harassment—i.e. whether the harassment was "physically threatening or humiliating, or a mere offensive utterance." *Harris*, 510 U.S. at 23. Unlike in *Morris* and *Bowman*, no one at Great Lakes ever physically threatened Massey or placed their hands on her.[2] Additionally, much of the harassment occurred in the context of uniform inspections and performance evaluations, meaning that the interactions between Massey and her supervisors were necessarily

---

[2]The notable exception to this occurred while Massey was employed by Detroit Water, not Great Lakes. A supervisor at Detroit Water had another female employee physically reach into Massey's shirt to check that she was wearing a bra. However, as explained above, Nathan has not explained how we could properly find Great Lakes liable for that harassment.

one on one. Although "[c]ommon experience teaches that . . . personal gender-based remarks that single out individuals for ridicule . . . have a greater impact on their listeners" than "generalized statements," *EEOC v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328–29 (4th Cir. 2010) (internal quotation marks omitted), the lack of an audience for these personal remarks reduces their humiliating nature. Similarly, although the supervisors may have chosen poor words to convey their point, the fact that their comments regarding Massey's bra were conveying work-related information about her uniform renders them less severe than comments with no conceivable work purpose.

Finally, we consider whether the harassment unreasonably interfered with Massey's work performance. To show unreasonable interference, Nathan "need not prove that [Massey's] tangible productivity has declined as a result of the harassment" but he must show that the harassment "made it more difficult to do the job." *Williams*, 187 F.3d at 567 (quoting *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988)). Here, Massey experienced some of the harassment during meetings and a class, which could have affected her ability to process the information conveyed during those meetings. Nathan has also presented evidence that Massey was disciplined after discussing the harassment with a co-worker. Furthermore, much of this harassment was perpetuated by supervisors, which would likely change a reasonable person's relationship with her supervisor and, therefore, her ability to approach her supervisor about work-related issues. Although Nathan's arguments regarding this factor are minimal, a reasonable jury could arguably find that the location and timing of the harassment, the discipline for discussing the harassment, and the supervisory position of some of the harassers would have made it "more difficult" for a reasonable person in Massey's shoes to fulfill her job duties.

Before considering these four factors together, we must also define the "constellation of surrounding circumstances." *See Oncale*, 523 U.S. at 82. The surrounding circumstances in this case include the harassment that Massey experienced at Detroit Water and Massey's allegation that when Great Lakes learned of Massey's sexual-harassment complaints through Yarnall's letter, it chose to investigate and possibly punish Massey for voicing those complaints in the workplace instead of investigating the underlying conduct. Both of these circumstances could influence how a reasonable person "in [Massey's] position," *see Oncale*, 523 U.S. at 82, would

have understood the harassment at Great Lakes, so they should be considered in determining the objective hostility of the workplace.

Even after taking these surrounding circumstances into account, however, we hold that a reasonable person would not have found the Great Lakes environment to be hostile, as that term is defined by our case law. Given the relatively low number of incidents at Great Lakes, the harassment Massey faced was closer to "isolated incidents" than a pattern of conduct that altered "the conditions of [Massey's] employment." *Morris*, 201 F.3d at 790. These isolated incidents were also less severe than incidents that this court has found insufficient to survive summary judgment in the past, even when considered in light of the harassment at Detroit Water. *See, e.g.*, *Bowman*, 220 F.3d at 464. Additionally, Massey was never physically threatened. Although a reasonable jury may be able to find that the harassment unreasonably interfered with Massey's work performance, that factor alone is not sufficient to support the finding that the environment at Great Lakes was objectively hostile in this case. Therefore, we affirm the district court's grant of summary judgment to Great Lakes on Nathan's hostile work environment claims.

## B.

Nathan next claims that Great Lakes retaliated against Massey in violation of Title VII and the ELCRA by firing Massey because she complained about sexual harassment. Title VII and the ELCRA prohibit retaliation against employees who oppose discriminatory employment practices. 42 U.S.C. § 2000e-3(a); MICH. COMP. LAWS § 37.2701(a). To establish a prima facie case of retaliation, Nathan must show that: "(1) [Massey] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to [Great Lakes]; (3) [Great Lakes] thereafter took adverse employment action against [Massey]; and (4) there was a causal connection between the protected activity and the adverse employment action." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007); *Wasek*, 682 F.3d at 472 ("[T]he ELCRA [retaliation] analysis is identical to the Title VII analysis."). If Nathan presents sufficient evidence of all of the elements of his prima facie case, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Dixon*, 481 F.3d at 333 (quoting *Morris*, 201 F.3d at 792–93). If Great Lakes provides such a

reason, Nathan must then show that Great Lakes' "proffered reason was not the true reason for the employment decision." *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Nathan claims that Massey was fired because she complained that she was being sexually harassed by Sheard. As evidence, he points to the temporal proximity between Massey's complaints and her termination, Massey's testimony that Sheard joked about firing Massey in July of 2017, Sheard's later comment that he would fire Massey if she was ever one minute late for work again, and Stevenson's comment to another employee that Great Lakes would be "getting rid of her" soon. DE 21-2, Massey Dep., PageID 618, 631.

Great Lakes counters that it actually fired Massey for falsifying an incident report, not for complaining of sexual harassment. Specifically, Great Lakes claims that Massey failed to note in an incident report that she had been in an accident in a company car, even though she knew that she had been in an accident.

Nathan admits that on October 29, 2017, Massey was driving a company car, the car was in an accident while she was driving it, and Massey turned in an incident report that did not inform her supervisors that the car had been in an accident. However, he claims that Massey did not know that she had been in an accident and that Great Lakes could not have actually believed that Massey had falsified the report because it never interviewed her to learn her side of the story.

The district court found that Nathan had produced sufficient evidence to satisfy the first three elements of his prima facie case. However, the court held that Nathan had not provided sufficient evidence to satisfy the fourth element of his prima facie case—causation. Alternatively, the court concluded that even if Nathan had successfully presented a prima facie case, his claims would still fail because Great Lakes honestly believed that Massey had falsified her incident report.

Even assuming that Nathan could make out a prima facie case of retaliation, Great Lakes is entitled to summary judgment because it held an honest belief that Massey falsified her report. If an employer holds an "honest belief" that an adverse employment action is justified for a

legitimate reason, summary judgment in their favor is appropriate. *Clay*, 501 F.3d at 715. "The honest-belief rule is, in effect, one last opportunity for the defendant to prevail on summary judgment. The defendant may rebut the plaintiff's evidence of pretext, by demonstrating that the defendant's actions, while perhaps 'mistaken, foolish, trivial, or baseless,' were not taken with discriminatory intent." *Id.* at 714−15 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)). The burden is on the employer to show that its belief was honestly held. *Id.* at 714.

In this case, Great Lakes presented evidence that, based on the damage to the vehicle, Massey would have known that she was in an accident. For example, a section of the van's grill was ripped off of the front of the van and it appeared that the "vehicle had been 'run-a-ground' on something such as a parking breaker or a railroad tie, then when the driver backed off of the object [it] pulled the front clip out." DE 16-1, Report, PageID 489. Massey also indicated in her incident report that she "observed orange anti[-]freeze leaking from the front of the vehicle," and surveillance footage shows that there was visible front-end damage to the van. DE 14-29, Investigation File, PageID 353, 384. It was reasonable for Great Lakes to infer that a driver who had to back off of an object which had caused significant damage to her car would have known that she had been in an accident, especially when the driver admitted to looking at the front of the vehicle after the accident. Considered alongside Sheard's unrebutted testimony that he honestly believed that Massey falsified her report, this evidence is sufficient to carry Great Lakes' burden that it honestly believed that Massey falsified her report.

Nathan attacks this conclusion by pointing to what Great Lakes did not know. For example, Great Lakes never received a statement from Massey, so it did not know whether there was some reason that she may not have known that she was in an accident. And Sheard testified that he did not know exactly what Massey knew when she filed her report. Nathan also points out that the worst punishment Massey would have faced for simply being in an accident and reporting it would have been a suspension. So, as the argument goes, Massey would have been motivated to be truthful in her incident report.

These critiques of Great Lakes' decision do not change the conclusion in this case. For one thing, Great Lakes tried to get Massey's side of the story, but she refused to make a statement. For another, "[a]n employer's pre-termination investigation need not be perfect in

order to pass muster under the [honest-belief] rule." *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 591 (6th Cir. 2014). And although Massey is correct that Sheard testified that he did not know exactly what Massey knew, he also testified that he had an honest belief that, based on all of the evidence he found during his investigation, Massey falsified her report. Massey has provided no evidence to counter this conclusion or to show that a reasonable jury could find that Great Lakes committed an error that was "too obvious to be unintentional." *Id.* (citation omitted). For those reasons, we affirm the district court's grant of summary judgment to Great Lakes on Nathan's Title VII and ELCRA retaliation claims.

## C.

Nathan also argues that Great Lakes retaliated against Massey for taking FMLA leave. An employer shall not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). To establish a prima facie case of FMLA retaliation, Nathan must show that:

> (1) [Massey] was engaged in an activity protected by the FMLA; (2) [Great Lakes] knew that she was exercising her rights under the FMLA; (3) after learning of [Massey's] exercise of FMLA rights, [Great Lakes] took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). If Nathan establishes his prima facie case, the burden of production shifts to Great Lakes to show that there was "a legitimate, nondiscriminatory reason" for the adverse action. *Id.* If Great Lakes satisfies this burden, the burden shifts back to Nathan to show that Great Lakes' stated reason was pretextual. *Id.* at 761–62.

The district court found that Nathan had not produced proof regarding the second and fourth elements of his prima facie case. The court also concluded that, even if Nathan could meet his prima facie burden, he could not prove pretext for the same reasons that he could not prove pretext on the Title VII and ELCRA claims.

On appeal, Nathan presents little developed argument that he established his prima facie case. However, even assuming that he could make out a prima facie case, he admits that the

pretext analysis for his FMLA claim is the same as the pretext analysis for the Title VII and ELCRA claims.  Given that Nathan cannot establish pretext in the Title VII and ELCRA context, he cannot establish pretext in the FMLA context.  Therefore, we affirm the district court's grant of summary judgment to Great Lakes on Nathan's FMLA retaliation claim.

IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Great Lakes as to all of Nathan's claims.

———————————

## CONCURRENCE

———————————

RONALD LEE GILMAN, Circuit Judge, concurring.  The closest issue in this case is whether Massey's hostile-work-environment claim should have been allowed to go to a jury. I have no qualm with any other aspect of the lead opinion's analysis of the issues.  As for the hostile-work-environment claim, I write separately to note that the outcome might have been different if the doctrine of successor liability had been raised and found applicable.

Sixth Circuit precedent, as the lead opinion aptly explains, constructs a high hurdle for conduct to amount to "severe or pervasive" harassment for purposes of Title VII liability.  Based on that precedent, the five verbal-harassment incidents experienced by Massey over a roughly 15-month period of time at Great Lakes are insufficient to clear that hurdle and reach a jury.

But the analysis might have been different if we had been urged to take into full account the particularly humiliating and invasive incidents that Massey experienced before Detroit Water transitioned into Great Lakes.  Namely, (1) when Massey's male supervisor commanded a female employee to reach under Massey's shirt to feel for a bra, and (2) when Massey requested leave because she had started her period and blood had soaked through her clothes, but her supervisor denied her leave, told her that she stank, and other coworkers and supervisors later mocked her for the incident by laughing at her and laying down towels and plastic on chairs.

That the harassment experienced by Massey spanned two different employers should not automatically exclude full consideration of the incidents that occurred during Massey's time with Detroit Water.  The record, albeit sparse on the logistics of the Detroit Water-to-Great Lakes transition, indicates that the facilities and employees of Detroit Water were transferred via agreement to Great Lakes at the end of 2015.  In fact, the employees at Detroit Water were terminated on December 31, 2015 and then immediately rehired the following day, January 1, 2016, as Great Lakes employees.  In other words, employees and supervisors (including the HR team) retained their positions and titles after the transition.

This raises the question of whether the doctrine of successor liability is applicable here. An entity assuming not only assets but also employees from a predecessor employer faces the risk of liability regarding the workforce that it is inheriting. The successor-liability doctrine ensures that the harassment experienced by an employee cannot be summarily erased for purposes of Title VII liability simply because the conduct occurred at a predecessor employer. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1091 (6th Cir. 1974) ("We hold only that Title VII per se does not prohibit the application of the successor doctrine, but rather mandates its application. Title VII was designed to eliminate discrimination in employment and the courts were given broad equitable powers to eradicate the present and future effects of past discrimination."). Indeed, "[f]ailure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with an incomplete remedy." *Id. See also Cobb v. Cont. Transp., Inc.*, 452 F.3d 543, 553–54 (6th Cir. 2006) (noting that "this Court extended successor liability from the labor law context to Title VII," and outlining a balancing test for determining whether the application of successor liability would be equitable).

This case appears to be one in which successor liability might apply. But we cannot explore the application of the doctrine further because the appellant did not raise, brief, or argue the issue. I therefore reluctantly concur in affirming the district court's adverse ruling on the hostile-work-environment claim.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 20-1761

KENNETH A. NATHAN, Chapter 7 Trustee for the
Bankruptcy Estate of Nicole Massey,

     Plaintiff - Appellant,

     v.

GREAT LAKES WATER AUTHORITY,

     Defendant - Appellee.

```
┌─────────────────────────────┐
│          FILED              │
│        Mar 30, 2021         │
│   DEBORAH S. HUNT, Clerk    │
└─────────────────────────────┘
```

Before:  GILMAN, GIBBONS, and SUTTON, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's grant of summary judgment to Great Lakes Water Authority is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk